James Brett Barnett was convicted of the intentional murder of Martha West Barnett, his former wife, and sentenced to life imprisonment in the penitentiary. On appeal, he argues that the trial court erred by refusing to charge the jury on the lesser included offense of manslaughter.
Barnett pleaded not guilty and not guilty by reason of mental disease or defect. Prior to trial, he was sent to Taylor Hardin Secure Medical Facility to determine whether he was competent to stand trial and whether he was sane at the time of the offense. Barnett was found competent to stand trial. In the opinion of the forensic *Page 811 
examiner, "at the time of the alleged offense, Mr. Barnett was experiencing a mental state which is called depersonalization and . . . this state of mind greatly reduced his ability to act in a rational manner." The examiner found that Barnett's "behavior description closely fits that of a DSM-III diagnosis of Depersonalization Disorder with Partial Amnesia."
 "This disorder is marked by an alteration in the perception or experience of the self so that one's usual sense of one's own reality is temporarily lost or changed. This experience is manifested by a sense of self-estrangement or unreality, in which the individual sometimes sees himself as if from a distance. He may feel 'mechanical' or as if in a dream, and feel that he is not in complete control of his actions or speech. These feelings and experiences are bothersome and unpleasant to the individual, and may be accompanied by depression, anxiety, obsessive ruminations, and possibly a fear of going insane, especially as the acute phase passes. This condition usually has a rapid onset with a more gradual disappearance, and is most likely to occur or reoccur when the person is experiencing anxiety, depression, or severe stress.
 "In my opinion, Mr. Barnett was experiencing such a state of mind at the moment of the alleged offense, and I believe that this state of mind rendered him temporarily unable to exert sufficient, rational and conscious control over his frustration, fear, and anger concerning his situation. I also believe that it was this state of mind that was a primary factor in his loss of control to the point that he committed the alleged offense."
At trial the defense called the State forensic examiner as a witness. He testified to the following:
 "I found that Mr. Barnett is not basically psychotic in the sense of being schizophrenic or seriously mentally disordered. In fact, he had no history of reported mental health treatment. At the time that I saw him in the hospital he was showing some signs of what we call a stress reaction and that is reaction to being under stress, he was showing some depression and some anxiety, but this would not be particularly unusual for a person in his condition, we have quite a few people who show signs of fairly severe stress, but certainly not showing any signs of psychosis. It was also my opinion that at the time of the alleged offense that he probably, most likely, suffered what we call a dissassociative or a depersonalization reaction which occurred because of the excessive stress and which caused him to lose a sense of self-reality and self-control, and this was the primary factor in his acting out his behavior.
 Q "Is that a recognized mental disease defect, Doctor?
"A Yes, it is."
In the case, the trial judge instructed the jury on the offense of murder and the defense of insanity. He did not charge on manslaughter.
In Alabama, manslaughter may be either a homicide committed recklessly or a homicide that would be murder except that it was committed due to a sudden heat of passion caused by legal provocation. § 13A-6-3, Code of Alabama 1975. Barnett fired five shots at point blank range into his ex-wife's head after threatening for a year to kill her. He does not argue that he was entitled, under these facts, to a charge on "sudden heat of passion" manslaughter. The evidence conclusively demonstrates that any ill will, "provocation," or "heat of passion" between Barnett and his estranged wife had existed since the time of their divorce, one year prior to the homicide, and was not, in any sense, "sudden."
Barnett does argue that the jury should have been charged on "reckless" manslaughter, because the evidence of his mental disease or defect at the time of the offense rendered him incapable of forming the intent necessary for murder. He analogizes the psychiatric testimony presented here to evidence of intoxication: although "[i]ntoxication is not a defense to a criminal charge, . . . intoxication is admissible in evidence whenever it is relevant to negate *Page 812 
an element of the offense charged." § 13A-3-2(a). Cf. §13A-2-6(a)(1) (A mistake of fact is not a defense to a criminal charge unless the factual mistake negatives the culpable mental state required for the commission of an offense), and13A-2-6(d) ("A mistake of law, other than as to the existence or meaning of the statute under which the defendant is prosecuted, is relevant to disprove the specific state of mental culpability required by the statute under which the defendant is prosecuted.").
Barnett argues that the issue of his mental state should have been submitted to the jury under instructions that it could negate the intent requirement for murder, thereby reducing the killing to manslaughter. This contention embodies the concept of "diminished capacity" or "diminished responsibility," and was specifically rejected by the draftsmen of our criminal code. See Ala. Code § 13A-6-3 (Commentary at 158):
 "Under § 13A-6-3(a)(2), it was originally proposed to replace the 'heat of passion' due to provocation criterion with 'extreme mental or emotional disturbance,' . . . which approach is being adopted by many modern criminal codes. . . . This standard originated in the Model Penal Code § 210.3 and is discussed in Commentary, (Tent. Draft No. 9) pp. 28-29.
 "However, some members of the Advisory Committee considered the proposal unsound, unclear and susceptible of abuse, so it was not adopted, and § 13A-6-3(a)(2) retains the 'heat of passion' under legal provocation defense." § 13A-6-3 Commentary (emphasis added).
See also Neelley v. State, 494 So.2d 669, 682 (Ala.Cr.App. 1985), affirmed, Ex parte Neelley, 494 So.2d 697 (Ala. 1986) cert. denied, Neeley v. Alabama, 480 U.S. 926, 107 S.Ct. 1389,94 L.Ed.2d 702 (1987); Hill v. State, 507 So.2d 554, 556
(Ala.Cr.App. 1986), cert. denied, Ex parte Hill, 507 So.2d 558
(Ala. 1987).
Although Alabama adopted the criterion for insanity contained in § 4.01 of the Model Penal Code, it did not adopt the accompanying section of the Model Penal Code, § 4.02(1), which provided that "[e]vidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did or did not have a state of mind which is an element of the offense." Compare Model Penal Code § 4.02 (A.L.I. 1980) with Ala. Code § 13A-3-1 (1975). See §13A-3-1 Commentary.
"The rule applied in this jurisdiction is sometimes referred to as the 'all-or-nothing' approach." Hill, 507 So.2d at 556. Under this approach, a "defendant must either establish his insanity as a complete defense to or excuse for the crime, or he must be held to full responsibility for the crime charged." Annot., 22 A.L.R.3d 1228, § 4 at 1236 (1968).
Accordingly, Barnett was not entitled to a charge on reckless manslaughter on the theory of diminished mental capacity. This court's conclusion in Hill, 507 So.2d at 55657, is equally applicable here:
 "If the jury in the present case had found that appellant Hill was suffering from a mental disease or defect at the time she shot the decedent and that that disease or defect produced the act, then she could be found not guilty by reason of mental defect. In that event, a charge on the lesser included offense would not be needed. If, on the other hand, she was found to be sane at the time of the murder, a lesser included offense charge on reckless manslaughter should be given only if the facts of the particular case — facts unrelated to any diminished mental capacity — would warrant the giving of such a charge. . . . Here, the appellant admitted taking the gun from a dresser drawer, pointing it at the head of the decedent and shooting him in the head repeatedly. Her actions were not consistent with a finding of recklessness. Since there was no evidence in the present case that would support an instruction on reckless manslaughter, the trial court did not err in denying the appellant's charge." 507 So.2d at 556-57 (citation omitted). *Page 813 
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.