## COMMONWEALTH *VS.* MARC FINSTEIN.

Middlesex. October 9, 1997. - December 4, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Assistance of counsel, Capital case. *Constitutional Law,* Assistance of counsel. *Homicide.*

At the trial of an indictment for murder in the first degree, the decision of defense counsel not to present expert psychiatric evidence that would have tended to undercut the Commonwealth's proof of the defendant's state of mind was not unreasonable, where the defense strategy, in which the defendant concurred, was that the defendant did not commit the crime; there was no ineffectiveness of counsel. [203-204]

The record of a first degree murder trial demonstrated that the findings of extreme atrocity or cruelty and premeditation were warranted, and this court declined to exercise its power under G. L. c. 278, § 33E, to reduce the verdict or to grant a new trial. [204-205]

INDICTMENT found and returned in the Superior Court Department on January 18, 1990.

The case was tried before *Robert A. Barton,* J., and a motion for a new trial was heard by him.

*Jeffrey L. Baler* for the defendant.

*Rosemary Daly,* Assistant District Attorney, for the Commonwealth.

WILKINS, C.J. A jury convicted the defendant of murder in the first degree on the theories of deliberate premeditation and extreme atrocity or cruelty. We have before us the defendant's appeal from his conviction, in which he does not assert any trial error but seeks a reduction in the verdict or a new trial pursuant to G. L. c. 278, § 33E. He has also appealed from the denial of his motion for a new trial which was based on a claim of ineffective assistance of trial counsel. We affirm the conviction and the order denying the defendant's motion for a new trial.

The jury were warranted in finding the following facts. On the morning of December 15, 1989, the defendant stabbed the

seventy-nine year old victim to death in her apartment in Waltham. Shortly before the homicide, the defendant rang the doorbell of an upstairs neighbor of the victim. When the upstairs neighbor came to the common front door of the building, the defendant asked whether she would like to purchase some shoes. She said that she would not. The defendant, who was carrying a clipboard and acted normal, inquired if the residents of the first-floor apartment were at home. The upstairs neighbor said that they were not. The defendant left. As the neighbor was about to walk up the stairs to her apartment, the victim, who had just returned home through her back door, opened the front door of her apartment and inquired of her neighbor who had been at the front door. The victim took some literature about shoes that the defendant had left for the residents of her apartment and went back into her apartment. Shortly thereafter the upstairs neighbor heard a scream from the victim and called for help. Another neighbor looked through the kitchen window and saw the victim lying on her back in the bathroom. He then ran to the front of the house where he saw a man calmly coming down the front steps. The neighbor asked the man if he wanted something, and he calmly replied, "Nope."

The victim had five stab wounds and some injuries to her face. A police officer found a piece of broken clipboard under the victim. A fingerprint of the defendant was on the clipboard. There were bloody footprints and drag marks from the kitchen to the bathroom. The clipboard, which could have caused the injuries to the victim's face, had been stolen from the desk of a supervisor at a shoe wholesaler where the defendant had been employed until about a week before the murder. In his work with shoe cartons, the defendant had used a knife with a three-inch blade, a knife that a medical examiner testified could have inflicted the victim's wounds. A search of the defendant's home produced one of the defendant's sneakers with blood on it. The sneaker had the pattern of a footprint that had been formed on the victim's kitchen floor.

The defendant defended on the ground that someone other than he had committed the murder. There were discrepancies in the witnesses' descriptions of the "salesman." No one had selected the defendant's photograph from an array. Ap-

proximately 500 people worked within the building that housed the defendant's former employer and any number of people could have taken the clipboard. More than two million pairs of sneakers of the type the defendant owned had been sold. The police found no other clothes of the type described by witnesses during the search of the defendant's home. No knife was ever found. Some of the victim's wounds were greater in depth than the length of the type of knife that the defendant had used at work.

The defendant's sole argument of substance in this appeal relates to evidence that was not presented at his trial and that he alleged in his motion for a new trial, filed on June 7, 1994, should have been introduced. The defendant asserts that he had a borderline I.Q. and a history of drug dependency, especially heroin dependency, and that he had withdrawal symptoms that had a significant bearing on his mental capacity at the time of the killing. His lawyer knew of the defendant's history of heroin use and before trial had moved, but without success, for funds for a drug dependency evaluation of the defendant. The defendant argues that the failure of his trial counsel to pursue the matter was ineffective assistance of counsel in a constitutional sense.

The motion judge, who was also the trial judge, found that at the time of the murder, the defendant was using from two to five bags of heroin a day. The defendant told the forensic psychiatrist who testified on his behalf at the hearing on the motion for a new trial that he had experienced panic, acute anxiety, paranoia, and desperation when deprived of heroin. The psychiatrist testified that, because of the defendant's state of withdrawal from heroin at the time of the murder superimposed on the defendant's neuropsychological deficits, the defendant reacted impulsively to the victim's screaming and at that time lacked the capacity to premeditate the crime, to act with extreme atrocity or cruelty, or to act with malice.

It is this evidence that the defendant asserts would have provided him "with a defense based on diminished capacity." There is no defense of diminished capacity in this State. See *Commonwealth* v. *Parker*, 420 Mass. 242, 245 n.3 (1995). The

evidence that the defendant asserts should have been presented to the jury would have tended to show that he lacked the capacity to premeditate, to act with extreme atrocity or cruelty, or to act with malice. That evidence would have been a "defense" only in the sense that it would have tended to undercut the Commonwealth's proof of the defendant's state of mind.

A psychiatrist testified for the Commonwealth that an inability to control impulses was not typical of heroin withdrawal, that the defendant's conduct and appearance before and after the murder did not support the conclusion that he was undergoing acute heroin withdrawal, and that the defendant had the capacity to plan and to have those thought processes that are elements of deliberate premeditation, extreme atrocity or cruelty, and malice. The judge credited this testimony, and concluded that the defendant's expert testimony, weighed with that of the Commonwealth's expert, would not likely have influenced the jury's findings. On the other hand, there is no basis for concluding that, if presented as a witness, the defendant's expert would not have been permitted to testify at trial as he did at the hearing on the motion for a new trial.

The issue before the judge was whether defense counsel's performance fell measurably below that of an ordinary fallible lawyer and, if so, whether "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). See *Commonwealth* v. *White*, 409 Mass. 266, 272 (1991); *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Where, as here, the claim is that defense counsel committed a tactical error, the defendant must demonstrate that defense counsel's tactical judgment was manifestly unreasonable. *Commonwealth* v. *Roberts*, 423 Mass. 17, 20 (1996). *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978).

The decision of defense counsel not to pursue the state of mind evidence was not unreasonable. The defendant consistently maintained that he wanted to present the defense that he was not the person who killed the victim. The judge found, based on the evidence, including the testimony of the defendant's trial counsel, that defense counsel knew that there was no eyewit-

ness to the killing, that no blood of the victim was found on the defendant's clothes, and that no murder weapon had been found. The defendant and defense counsel had no difficulty in communicating. The defendant was aware of his situation and told his counsel that he did not commit the murder. They discussed the inconsistency of simultaneously arguing a defense of mistaken identity and diminished mental capacity. They decided, after discussing the options, to pursue the defendant's stated preference that he defend against the charge on the ground that he did not commit the crime.

There was no ineffectiveness of counsel. The defendant made the choice of how to confront the charge. The Commonwealth's case was strong but subject to an attack that might have raised a reasonable doubt. The evidence of the defendant's conduct before and immediately after the crime, including planning to find and invade a vacant residence and calmly leaving the scene of the murder, casts doubt on the likely success of a claim that the defendant's conduct was influenced by an impulsive reaction to withdrawal from heroin. Strategic choices reasonably made by counsel with a defendant's concurrence may not be challenged successfully on appeal on the ground that counsel was ineffective in a constitutional sense.

The defendant is not entitled to a new trial or to a reduction in the verdict pursuant to our consideration of the record under G. L. c. 278, § 33E. He does not argue that § 33E standards are to be applied in our review of the denial of a motion for a new trial heard in conjunction with our § 33E review of his appeal from his conviction of murder. Even if we were to apply such a higher standard (see *Commonwealth* v. *Wright*, 411 Mass. 678, 682 [1992]), the defendant would not be aided. There is no substantial likelihood that the absence of evidence of the defendant's state of mind at his trial created a miscarriage of justice. The defendant made his informed choice. His counsel acted reasonably in accepting that choice. On balance the case for the defendant's lack of mental capacity was minimal at best.

Considering the record of the trial, we conclude that there is no reason to reduce the verdict or to order a new trial. The murder occurred in the course of a planned invasion of the defenseless victim's home. The multiple stab wounds fully war-

ranted the findings of extreme atrocity or cruelty and premeditation.[1]

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*

---

[1]Just prior to counsel's closing arguments the trial judge made worthwhile suggestions to counsel that we summarize:

In his closing argument, no counsel shall state any personal opinion. No "I think," "I feel," "I believe." No personal opinions concerning the credibility of witnesses. No counsel shall state any personal belief that implies personal knowledge as an attorney.

Counsel shall not argue inferences from matters that are not in evidence or that have been excluded.

Counsel shall not allude to the appellate processes.

Counsel shall not address facts not in evidence.

There shall be no remarks to invoke the jury's sympathy, and there shall be no remarks to excite the jury's prejudice and passions.

There shall be no statement relative to the consequences of the jury verdict, and that includes any messages to society by the verdict. So there will be no argument relative to the consequences of the jury verdict, and that includes, of course, whatever the potential punishment is for the crime.

There shall be no "Golden Rule" argument, the district attorney shall not ask members of the jury to place themselves or one of their relatives in the shoes of the victim, and defense counsel shall not ask any one of the jurors to place themselves or one of their loved ones in the shoes of the defendant.