Adrian YANCEY, Petitioner,

v.

Timothy HALL, Respondent.

No. CIV.A. 00–11755–WGY.

United States District Court,
D. Massachusetts.

Dec. 24, 2002.

Adrian Yancey, Concord, MA, Pro se.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

Adrian Yancey ("Yancey") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 1995 convictions in the Massachusetts Superior Court, sitting in and for the County of Middlesex, for distribution of cocaine (second and subsequent offense) and distribution of a controlled substance within a school zone. His petition raises a single ground for relief: the ineffective assistance of his trial counsel.

Yancey's arrest and subsequent prosecution arose out of an undercover narcotics operation taking place in Framingham, Massachusetts during the summer of 1994. At his trial, the prosecution adduced evidence that on the night of August 22, 1994, Yancey had sold a twenty-dollar bag of crack cocaine to an undercover officer in the Framingham Police Department, Officer Jose Feliciano. Trial Tr., Vol. I, at 101–14. Officer Feliciano then radioed a description of the seller to his fellow officers, one of whom, Detective Paul Kelley, spotted and stopped Yancey. *Id.* at 104–05, 145–149. While Detective Kelley checked Yancey's driver's license, Officer Feliciano drove by to confirm that this was the same man who had sold him crack cocaine minutes earlier. *Id.* at 107–08. Yancey was released that night to avoid revealing Officer Feliciano's cover. *Id.* at 184. After the undercover operation had concluded, Yancey was indicted in November 1994.

Yancey's defense centered on a theory of mistaken identity. In his opening statement, Yancey's counsel argued that Yancey was not the man who had sold the drugs to Officer Feliciano on August 22, 1994. *Id.* at 84. Most importantly, for the purposes of the instant motion, Yancey's defense counsel stated, "you will find that *Adrian Yancey will tell you,* and we'll show that Adrian Yancey was not in Framingham, he was not there, he was not on Claflin Street and Hayes Street on August 22nd of 1994" (emphasis added). *Id.* The defense counsel also alleged that Yancey had been stopped by the Framingham police in September, rather than August, at which point no drugs were found on him. *Id.* at 85–86. He stated that "we'll show you how that stop took place, and we'll show you the detail of that stop in September of 1994." *Id.* at 85. In addition, Yancey's counsel emphasized that the Framingham police had never found marked

money or drugs on Yancey and told the jury that "there's a lot of holes in this case . . . ." *Id.* at 85–86.

During the trial, Yancey's counsel cross-examined each of the prosecution's witnesses. Through his cross-examination, Yancey's counsel established that the buy money used in the sale had never been recovered, *id.* at 205, that no drugs had ever been found on Yancey, *id.*, and that the officer who ultimately arrested Yancey (Detective Kelley) had not been present during the actual drug transaction with Officer Feliciano, *id.* at 155.

At the close of the prosecution's case, Yancey's counsel moved for a required finding of not guilty. *Id.* at 215. He argued that there was "nothing to show that this individual possessed any drugs, or that he possessed any of the money that the Government claimed it was distributing, or that it had kept a record of, and that it would have a record of [sic] would have been the best evidence to show that it had distributed money to my client for drugs." *Id.* at 215–16. The court denied this motion, ruling that a rational factfinder could determine beyond a reasonable doubt, particularly in light of Officer Feliciano's testimony, that Yancey was the person who had sold drugs to Officer Feliciano. *Id.* at 216.

Yancey's counsel subsequently rested without calling any witnesses for the defense or adducing evidence regarding Yancey's alleged stop by the police in September. Trial Tr., Vol. II, at 6. The trial judge then explained to the jury that clos-

ing arguments would occur. *Id.* at 9–11. The judge reiterated that the defendant had no obligation to testify or, indeed, to present any evidence whatsoever.[1] *Id.* at 9.

In his closing argument, Yancey's counsel emphasized that the police officers had never found on Yancey the twenty-dollar bill used to purchase the drugs, *id.* at 28, and that Detective Kelley had not actually seen the alleged drug transaction take place, *id.* at 21. Yancey's counsel also highlighted a disparity in the officers' testimony with respect to whether the drug seller on the night in question had been wearing a hat with or without a brim. *Id.* at 20–21.[2] After closing statements had concluded, the trial judge charged the jury, at which point he reiterated that "[t]he fact that the Defendant did not testify has nothing to do with the question of whether he is guilty or not guilty. So, you are not to consider it in any way or even to discuss it in your deliberations." *Id.* at 80.

On November 6, 1995, the jury convicted Yancey of distribution of cocaine and distribution of a controlled substance within 1000 feet of a school zone. *Id.* at 98. Yancey then pled guilty on June 20, 1996 to the subsequent offense portion of his indictment for distribution of cocaine. Trial Tr., Vol. III, at 3. He was sentenced to five years for distribution of cocaine (second and subsequent offense) and to two years for distribution of a controlled substance within a school zone, such sentences to run consecutively. *Id.* at 13–14.

---

1. This instruction echoed the judge's instruction to the jury at the outset of the case that "in a criminal case such as this, a defendant need not testify, he need not present any evidence in defense of the charges brought against him; and indeed, he need not even argue in defense of those charges." Trial Tr., Vol. I, at 19.

2. Officer Feliciano had testified that the man from whom he purchased the crack cocaine was wearing a hat without a brim, Trial Tr., Vol. I, at 103, whereas Detective Kelley had testified that the man whom he subsequently arrested was wearing a hat with a brim, *id.* at 147, 155.

Yancey appealed his convictions to the Massachusetts Appeals Court. He argued that his counsel had been ineffective because "he promised in his opening statement that Mr. Yancey would testify and that other important evidence would be produced," and then failed to deliver on that promise, prejudicing Yancey's defense. Resp.'s Supplemental App. [Docket No. 5], Ex. B (Brief and Record Appendix of the Defendant–Appellant), at 7. Yancey analogized his counsel's performance to that found defective by the First Circuit in *Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988). *Id.* at 9–11. In *Anderson*, the petitioner's counsel told the jury in his opening statement that he would call a psychiatrist and psychologist to testify that the petitioner's murder of his wife had been unconscious and that on that night that petitioner had been "like a robot programmed on destruction." 858 F.2d at 17. The petitioner's counsel subsequently rested without ever calling any such experts and while still making the petitioner's mental condition the centerpiece of his defense. *Id.* at 19. The First Circuit ruled that his performance had been so ineffective that habeas corpus relief was warranted, stating that "little is more damaging than to fail to produce important evidence that had been promised in an opening." *Id.* at 17. The court reasoned that this was not a case in which counsel "abandon[ed] a defense—sometimes a plausible move." *Id.* at 19. Rather, counsel had "continued to assert defendant's mental condition ... as his principal defense," even while drawing attention to the weakness of that defense by failing to produce the promised evidence. *Id.* As such, counsel had "substantially damaged the very defense he primarily relied on." *Id.*

The Massachusetts Appeals Court denied Yancey's motion on October 4, 1999, in an unpublished opinion. *Com. v. Yancey*, 48 Mass.App.Ct. 1101, 716 N.E.2d 1082 (1999).[3] In its opinion, the court ruled that Yancey's counsel's remark during his opening statement that Yancey would testify was "fleeting and isolated," and that any harmful effect caused by that statement was offset by the trial judge's repeated instruction that no adverse inferences could be drawn from the defendant's decision not to testify. *Id.* at 1. Accordingly, the court explained that Yancey had not met his burden of showing that his counsel's tactical choices were "manifestly unreasonable." *Id.* at 2. The court distinguished the instant case from *Anderson*, because here, unlike in *Anderson*, counsel abandoned the original alibi defense, regarding which he had promised evidence, in favor of a new defense: that the Commonwealth had failed to satisfy its burden of proving that Yancey was the person who sold crack cocaine to Officer Feliciano. *Id.* at 2–3. As such, the court reasoned that Yancey's counsel's failure to deliver the evidence that he had promised in his opening statement did not undermine the defense that was ultimately presented to the jury. *Id.*

Yancey subsequently filed with the Supreme Judicial Court an application for leave to obtain further appellate review ("ALOFAR"). Resp.'s Supplemental App., Ex. E. The Supreme Judicial Court denied Yancey's ALOFAR on December 3, 1999. *Com. v. Yancey*, 722 N.E.2d 977 (Mass. 1999) (Table).

Yancey then filed a petition for habeas corpus in this Court. Yancey's petition originally raised two claims, both relating to the alleged ineffective assistance of his

**3.** The text of that opinion can be found in Exhibit D of Respondent's Supplemental Appendix [Docket No. 5].

trial counsel: (1) his counsel's unfulfilled promise of Yancey's testimony and evidence had harmed his case; and (2) his counsel had not mounted a challenge relating to the sufficiency of the evidence against him, particularly in regard to the police department's failure to recover from Yancey the twenty-dollar bill used to purchase the crack cocaine. Petition for Writ of Habeas Corpus [Docket No. 2], ¶ 12. The Commonwealth moved to dismiss Yancey's petition on grounds that his second claim had not been exhausted in state court. Yancey ultimately decided to amend his petition by deleting Ground Two and to proceed only on his exhausted claim regarding his counsel's failure to present promised evidence.

## II. DISCUSSION

█ Yancey's claim regarding the ineffective assistance of his counsel has been exhausted and is properly before this Court. In addressing Yancey's claim of ineffective assistance of counsel, the Massachusetts Appeals Court employed a standard—whether Yancey had demonstrated that his counsel's tactical choices were "manifestly unreasonable"—that was functionally equivalent to the federal standard for measuring ineffective assistance of counsel. The federal standard, outlined in *Strickland v. Washington*, examines whether the defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth amendment" and whether counsel's "deficient performance prejudiced the defense." 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Similarly, under Massachusetts law, the standard for ineffective assistance of counsel is "whether defense counsel's performance fell measurably below that of an ordinary fallible lawyer and, if so, whether 'better work might have accomplished something material for the defense' ... [When] the claim is that de-

fense counsel committed a tactical error, the defendant must demonstrate that defense counsel's tactical judgment was manifestly unreasonable." *Commonwealth v. Finstein*, 426 Mass. 200, 203, 687 N.E.2d 638 (1997) (internal citations omitted). The First Circuit has repeatedly held that the Massachusetts and federal standards for ineffective assistance claims are equivalent. *See, e.g., Stephens v. Hall*, 294 F.3d 210, 214–15 (1st Cir.2002).

Because the Massachusetts Appeals Court adjudicated Yancey's federal constitutional claim on its merits, this Court must review its determination using the deferential standard outlined by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under this standard, this Court cannot grant habeas corpus relief unless the Massachusetts Appeals Court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

█ A state court decision is contrary to clearly established Federal law only if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Here, it is evident that the Appeals Court's decision was not contrary to clearly established Federal law. The standard that it used in assessing Yancey's ineffective assistance of counsel claim was the functional equivalent of the federal *Strickland* standard, as noted above, and the facts presented in this case are not materially indistinguishable from

any Supreme Court cases in which the assistance of counsel was ruled ineffective.

Both Yancey and the Commonwealth devote the bulk of their arguments to an assessment of whether the Appeals Court's decision represented an unreasonable application of clearly established Federal law. A state court decision is considered unreasonable when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The First Circuit has explained that the appropriate inquiry is whether the state court's application of law was "objectively unreasonable,"—that is, whether it had " 'some increment of incorrectness beyond error' ... great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall,* 303 F.3d 24, 36–37 (1st Cir.2002) (internal citations omitted).

■ In assessing the reasonableness of Appeals Court's rejection of Yancey's ineffective assistance of counsel claim, the Court must look to the underlying constitutional standard for claims of ineffective assistance of counsel. *See, e.g., Hurtado v. Tucker,* 245 F.3d 7, 16 (1st Cir.2001). As noted above, this standard was outlined in *Strickland,* and requires a showing (1) that defense counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for these errors, the result of the proceeding would have been different. In other words, there are two prongs to the *Strickland* assessment: performance and prejudice. *See, e.g., Ouber v. Guarino,* 293 F.3d 19, 27 (1st Cir.2002).

■ The performance prong requires an assessment of whether Yancey's counsel was inexcusably ineffective and whether the Appeals Court was objectively un-

reasonable in determining that he was not. As the Appeals Court noted, it is unclear "why counsel made the representations that he did in his opening" and "why he did not then follow through." Resp.'s Supplemental App., Ex. D (unpublished opinion), at 1. It *is* clear, however, that Yancey's counsel's unfulfilled promise constituted a serious error. *See Ouber,* 293 F.3d at 28 (noting that "[i]t is easy to imagine that, on the eve of trial, a thoughtful lawyer may remain unsure as to whether to call the defendant as a witness. If such uncertainty exists, however ... the lawyer must exercise some degree of circumspection.").

The First Circuit has, in both *Anderson* and *Ouber,* discussed when counsel's failure to deliver promised testimony rises to the level of ineffective assistance of counsel, and these cases are instructive here. *See O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir.1998) (stating that "to the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness *vel non* of the state court's treatment of the contested issue"); *Ouber,* 293 F.3d at 26 (stating that such reference is particularly appropriate in ineffective assistance of counsel cases, which are highly fact-specific); *United States v. McGill,* 11 F.3d 223, 227 (1st Cir.1993) (noting the particularly fact-specific nature of allegations of ineffective assistance that arise from "a failure to produce a promised witness").

This Court rules that the situations in *Anderson* and *Ouber*—in which assistance of counsel *was* held ineffective as a result of counsel's failure to deliver promised testimony—are distinguishable in significant factual respects from the present case. In *Anderson,* as noted above, the court rested its ruling on the fact that defense counsel had continued to base his defense on the

defendant's mental state even after failing to present promised crucial psychiatric testimony in relation to that argument. The *Anderson* court contrasted counsel's actions from the decision to "abandon a defense—sometimes a plausible move." *Anderson,* 858 F.2d at 19.

The present case falls in between *Anderson*'s two poles of "continuation" and "abandonment." Counsel promised in his opening statement that Yancey would tell the jury—and that the jury would be shown—that Yancey was not present at the place and time in question. Counsel also promised to show the jury that Yancey did have an encounter with the police in September of 1994, thereby implying that some sort of mix-up had resulted in Yancey's being charged with the August 1994 drug sale. Counsel clearly abandoned this latter argument about the September 1994 stop; it was never mentioned again.[4] Counsel's treatment of the first argument, however, is more accurately described as a refinement, rather than an abandonment. He switched from stating that Yancey would *show* affirmatively that he had not been present at the time and place in question to stating that the prosecution *failed to show* that Yancey was not present. Both arguments, however, are essentially variants of the same basic defense. To that extent, the Appeals Court's classification of this case wholly into the "abandoned argument" category is inaccurate.

Nonetheless, the Appeals Court's ultimate conclusion that this case is distinguishable from *Anderson* is accurate. Unlike *Anderson,* this is not a case in which counsel promised to present highly dramatic and unusual evidence upon which the defense would be based, failed to do so,

and then continued full force with the defense as though no such omission had occurred. On the contrary, Yancey's counsel did deliver much of the evidence that he promised in his opening statement (such as the failure of police to find drugs or marked money on Yancey), and, to the extent that counsel failed to do so, he altered and refined the defense presented, such that the promised evidence was no longer necessary to sustain it.

*Ouber* is also distinguishable from the instant case. In *Ouber,* the defendant's counsel promised on four separate occasions in his opening statement that the defendant would testify, told the jury that their ultimate decision would hinge on the defendant's credibility and then set the stage for her testimony by calling twenty-four witnesses who testified to her reputation for veracity, only to advise the defendant against testifying (despite her desire to do so). *Ouber,* 293 F.3d at 22–24. In his summation, he then apologized to the jury for not presenting " 'more of a case.' " *Id.* at 23. The First Circuit found that these actions constituted an ineffective performance, explaining:

> [T]he error attributed to counsel consists of two inextricably intertwined events: the attorney's initial decision to present the petitioner's testimony as the centerpiece of the defense (and his serial announcement of that fact to the jury in his opening statement) in conjunction with his subsequent decision to advise the petitioner against testifying. Taken alone, each of these decisions may have fallen within the broad universe of professional judgments. Taken together, however, they are indefensible.

*Id.* at 27.

The instant case differs from *Ouber* in several ways. Unlike *Ouber,* there is no

---

4. Counsel did, however, establish that Framingham police officers had seen Yancey in the two-block area of the drug sale numerous

times after August 22, 1994. Trial. Tr., Vol. I, at 152, 186.

indication that Yancey wanted to testify and was advised by his counsel against doing so. Yancey's brief states only that his trial counsel "never fully advised him of the nagative [sic] impact on the jury of petitioner's failure to testify in light of his opening statement," without describing the advice that his counsel did provide. Pet'r.'s Br. [Docket No. 14] at 23. Moreover, in contrast to counsel's behavior in *Ouber*, Yancey's counsel neither made Yancey's personal testimony and credibility the centerpiece of his defense, nor did he repeatedly remind the jury that Yancey would be testifying. Furthermore, counsel did not fuel the jury's anticipation for this testimony by calling even a single witness to attest to Yancey's credibility, let alone twenty-four such witnesses. In addition, the record indicates that Yancey's counsel did score some points with his argument that Yancey was not present at the time and place in question, further undercutting Yancey's allegation of ineffectiveness.

■ For these reasons, the level of ineffectiveness displayed in *Ouber* far exceeds the alleged ineffectiveness at issue here. Given the *Ouber* court's emphasis on the truly egregious nature of counsel's performance in that case and its statement that "the complex dynamics of trial engender numerous missteps, but only the *most inexcusable* will support a finding that counsel's performance was so substandard as to compromise a defendant's Sixth Amendment right," 293 F.3d at 27 (emphasis added), this Court rules that the state court's rejection of Yancey's claim of ineffective assistance of counsel was not objectively unreasonable. His counsel's performance did include a significant misstep, but that misstep—taken in the context of his representation over the course of Yancey's two-day trial—did not rise to the level of ineffective assistance of counsel.

■ Given this conclusion, it is unnecessary to determine whether the missteps of Yancey's counsel prejudiced his defense. The Court notes, however, that even had it deemed Yancey's counsel's missteps constitute an ineffective performance, it could not simply presume prejudice as a result. In *Ouber*, the First Circuit emphasized the general rule· that a defendant must demonstrate actual prejudice and explained that prejudice can be presumed only in "three narrowly circumscribed situations." *Ouber*, 293 F.3d at 33. The court made clear that counsel's failure to carry out a promise to present an important witness is *not* one of those rare situations in which prejudice is presumed. *Id.* at 33.

■ Thus, even assuming *arguendo* that Yancey had prevailed in showing that his counsel's performance was ineffective, he would still have to show that "there is a strong possibility that [counsel's error] affected the outcome of the trial," that is, "whether the trial might have ended differently absent the lawyer's blunder." *Id.* In this regard the Court also rules that the Appeals Court's determination was not objectively unreasonable. As the Appeals Court accurately noted, counsel's unfulfilled promise was "fleeting and isolated," counsel did present an alternate defense for which the undelivered testimony was not essential, and the trial judge repeatedly instructed the jury—before opening statements, before closing statements, and in the jury charge—that Yancey was not required to testify and that no adverse inferences could be drawn from his failure to do so. As such, this Court rules that neither the Appeals Court's determination in regard to *Strickland's* "performance" prong nor its determination in regard to the "prejudice" prong were objectively unreasonable. Habeas relief is therefore unwarranted.

### III. CONCLUSION

Accordingly, Yancey's petition for a writ of habeas corpus [Docket No. 2] is DENIED.

SO ORDERED.