ALICE M. BATCHELDER, Chief Judge,
dissenting.
I respectfully dissent from the majority’s decision because Lancaster has not overcome AEDPA’s very high standard to establish that the Michigan Court of Appeals’s determination was an unreasonable application of or contrary to Supreme Court precedent. Before obtaining habeas relief from a federal court, “a state prisoner must show that the state court’s ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). Lancaster challenges the Michigan Court of Appeals’s denial of his due process claim, arguing that it unreasonably applied or issued a decision contrary to Rogers v. Tennessee, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001). Rogers holds that “a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is ‘unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.’ ” 532 U.S. at 462, 121 S.Ct. 1693 (quoting Bouie v. City of Columbia, 378 U.S. 347, 354, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)). Although the Michigan Court of Appeals did not expressly apply this rule, the court rejected Lancaster’s due process claim, finding that the application of Carpenter's abolishing of the diminished-capacity defense to Lancaster’s second trial did not violate his due process rights. Giving the Michigan Court of Appeals’s determination the benefit of the doubt required under AEDPA’s highly deferential standard, Slagle v. Bagley, 457 F.3d 501, 514 (6th Cir.2006) (quoting Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam)), I cannot agree that it was objectively unreasonable.
The majority concludes that the Michigan Court of Appeals unreasonably applied Rogers and Bouie when it held that Carpenter did not involve a change in the law that was susceptible to a due process challenge. However, the majority’s concern rests not on the Michigan Court of Appeals’s application of Rogers and Bouie, but on that court’s application of Michigan law. In concluding that Carpenter did not constitute a change in Michigan law, the court of appeals applied Michigan state law; it did not apply Bouie, Rogers, or any other Supreme Court precedent. See Michigan v. Lancaster, No. 263483, 2006 WL 3751420, at *1 (Mich.Ct.App. Dec. 21, 2006) (citing Michigan v. Doyle, 451 Mich. 93, 545 N.W.2d 627, 636 (1996), as holding that under Michigan law, the first interpretation of an unambiguous statute is not a change in law for the purposes of ex post facto and due process concerns). Although it seems illogical for the Michigan Court of Appeals to ignore the practical consequences of Carpenter and conclude that abolishing the diminished-capacity defense was not a change in law, that conclusion is not relevant to our review because it was based on state, not federal, law. *755 Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (“[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.”). Instead, we must determine if the Michigan Court of Appeals’s adjudication of Lancaster’s due process claim contradicts clearly established Supreme Court precedent. See Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam); Murphy v. Ohio, 551 F.3d 485, 505 (6th Cir.2009) (“[A] state-court decision can be found reasonable as long as neither the reasoning nor the result of the decision contradicts United States Supreme Court precedent.” (internal quotation marks omitted)). Because the court’s conclusion is consistent with Rogers and Bouie, it was not “so lacking in justification” as to entitle Lancaster to habeas relief. See Harrington, 131 S.Ct. at 786-87.
The Michigan Court of Appeals’s denial of Lancaster’s due process claim was reasonable primarily because the diminished-capacity defense was not well-established in Michigan and its elimination was, therefore, foreseeable. Under Rogers, the retroactive application of a judicial alteration of common law violates due process only when the alteration was unexpected and indefensible. Rogers, 532 U.S. at 462, 121 S.Ct. 1693 (quoting Bouie, 378 U.S. at 354, 84 S.Ct. 1697). In Lancaster’s case, Carpenter’s abolishing of the diminished-capacity defense was foreseeable. As the majority notes, diminished capacity arose in 1973, but Michigan courts chose to discuss diminished capacity not as a separate defense, but rather as an aspect of insanity. When the legislature codified insanity as a defense in 1975, it omitted any reference to a lower-capacity standard, and Michigan courts issued “a series of decisions continuing to address [the] diminished capacity defense as a form of the statutory insanity defense.” Michigan v. Carpenter, 464 Mich. 223, 627 N.W.2d 276, 282 (2001). And when the legislature amended the insanity statute in 1994, it still did not include any reference to diminished capacity. Surely the legislature’s choice not to codify diminished capacity is more significant than the state bar association’s choice to include it in its publication of standard jury instructions. Simply put, prior to Carpenter’s official elimination of the defense, neither the Michigan legislature nor the Michigan courts gave diminished capacity standing as a separate defense. Instead, the courts discussed diminished capacity as an aspect of insanity, and they applied the concept through the parameters of the insanity statute.
It is indisputable that defendants were able to raise the defense prior to Carpenter, but the availability of the defense alone does not make its elimination unexpected. Indeed, in Rogers, the year-and-a-day rule had been available to defendants for nearly one hundred years, but the Supreme Court nevertheless concluded that its elimination was foreseeable because the rule never served as the basis for a decision in the state and many other states had abolished the rule. In Michigan, diminished capacity likewise never served as the basis for any court’s decision. Even in Michigan v. Griffin, 433 Mich. 860, 444 N.W.2d 139 (1989), the Michigan Supreme Court’s remand for an evidentiary hearing to determine if counsel was ineffective for failing to raise diminished capacity as a defense reemphasizes only the point that the defense was available. It does not indicate that the defense was so well established that its elimination was unexpected.
The majority attempts to distinguish Rogers's holding by arguing that “none of the United States Supreme Court’s reasons for concluding that the elimination of the year-and-a-day rule was foreseeable pertain to Michigan’s diminished capacity *756 defense.” In reaching this conclusion, however, the majority overlooks the fact that several states have expressly abolished the use of the diminished-capacity defense in many contexts[1] — a factor the Court looked to in Rogers to determine whether a rule’s elimination was foreseeable. Although due process does not require that a defendant be aware of the law of other states, the Supreme Court stated that “the fact that a vast number of jurisdictions have abolished a rule that has so clearly outlived its purpose is surely relevant to whether the abolition of the rule in a particular case can be said to be unexpected and indefensible by reference to the law as it then existed.” Rogers, 532 U.S. at 464, 121 S.Ct. 1693.
Moreover, the majority ignores the Supreme Court’s main concern in Rogers— whether the retroactive application of the change in law was “an exercise of the sort of unfair and arbitrary judicial action against which the Due Process Clause aims to protect.” Id. at 467, 121 S.Ct. 1693. Carpenter abolished the diminished-capacity defense nearly five years before Lancaster’s second trial. In my view, applying Carpenter to Lancaster several years after it was handed down was neither unfair nor arbitrary, especially when Lancaster was able to argue insanity under the still-available insanity statute. The majority’s reliance on Michigan v. McRunels, 237 Mich.App. 168, 603 N.W.2d 95 (1999), to argue the contrary is misplaced because McRunels is not instructive on the issue of foreseeability. In McRunels, the court considered the retroactive application of a statutory, rather than a judicial, change in the law; therefore, the court never considered whether the change was foreseeable. See McRunels, 603 N.W.2d at 99-102; see also Rogers, 532 U.S. at 459-62, 121 S.Ct. 1693 (explaining that retroactive applications of statutory changes in law are analyzed under ex post facto principles while judicial changes are analyzed “in accordance with the more basic and general principle of fair warning”). Accordingly, McRunels is materially distinguishable, and the majority’s reliance on it to illustrate foreseeability is incorrect. Considering other jurisdictions’ elimination of the diminished-capacity defense, the length of time between Carpenter and Lancaster’s second trial, and the lack of independent standing that the defense had in Michigan — each of which were considerations of the Court in Rogers — the principles of Rogers indicate that Carpenter’s abolishing of the defense was not unexpected.
*757 Because the elimination of the diminished-capacity defense in Michigan was neither unexpected nor indefensible, the Michigan Court of Appeals’s adjudication of Lancaster’s due process claim was consistent with Supreme Court precedent. Accordingly, it was not so lacking in justification as to entitle Lancaster to habeas relief under AEDPA’s strict standard, and, therefore, I must respectfully dissent.

. See, e.g., Cal.Penal Code § 25(a) (2011); Mincey v. Head, 206 F.3d 1106, 1139 (11th Cir.2000) (applying Georgia law and recognizing that no state court has adopted the defense); Barnett v. Alabama, 540 So.2d 810, 812 (Ala.Crim.App.1988); Arizona v. Laffoon, 125 Ariz. 484, 610 P.2d 1045, 1047 (1980); O’Brien v. United States, 962 A.2d 282, 300-01 (D.C.2008); Hodges v. Florida, 885 So.2d 338, 352 n. 8 (Fla.2004); Hawaii v. Klafta, 73 Haw. 109, 117, 831 P.2d 512 (Haw.1992); Cardine v. Indiana, 475 N.E.2d 696, 698 (Ind. 1985); Iowa v. Plowman, 386 N.W.2d 546, 548 (Iowa Ct.App.1986) (stating that the defense is not available for general intent crimes); Kansas v. Pennington, 281 Kan. 426, 132 P.3d 902, 908 (2006); Louisiana v. Thompson, 665 So.2d 643, 647 (La.Ct.App. 1995); Maryland v. Greco, 199 Md.App. 646, 24 A.3d 135, 144 (2011); Massachusetts v. Finstein, 426 Mass. 200, 687 N.E.2d 638, 640 (1997); Cuypers v. Minnesota, 711 N.W.2d 100, 105 (Minn.2006); Stevens v. Mississippi, 806 So.2d 1031, 1051 (Miss.2001); North Carolina v. Adams, 85 N.C.App. 200, 354 S.E.2d 338, 343 (1987); Ohio v. Wilcox, 70 Ohio St.2d 182, 436 N.E.2d 523, 533 (1982); South Carolina v. Santiago, 370 S.C. 153, 634 S.E.2d 23, 28-29 (App.2006); Tennessee v. Grose, 982 S.W.2d 349, 353 (Tenn.Crim.App.1997); Davis v. Texas, 313 S.W.3d 317, 328 (Tex.Crim.App.2010); Keats v. Wyoming, 115 P.3d 1110, 1119 (Wyo.2005).