# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-2279

_____

Christopher Dineaa Bahtuoh

*Petitioner - Appellant*

v.

Michelle Smith, Warden

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 10, 2017
Filed: April 28, 2017

_____

Before LOKEN, MURPHY, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Christopher Bahtuoh participated in a drive by shooting and was convicted in state court of first degree felony murder. After unsuccessfully seeking state postconviction relief, he brought this federal habeas action under 28 U.S.C. § 2254. He claims that his defense counsel provided ineffective assistance by advising him

not to testify after counsel had promised the jury that he would. The district court[1] denied habeas relief, and Bahtuoh appealed. We affirm.

I.

In April 2009 Christopher Bahtuoh was driving in a Minneapolis neighborhood with Lamont McGee, a member of the I-9 gang. Although Bahtuoh was not a member of the gang, he had associated with I-9 members for years. During their ride Bahtuoh saw Kyle Parker, a member of the rival Taliban gang, standing with a few friends. Bahtuoh knew Parker from school and turned his car around to speak with him. When Parker spotted the car approaching, he told his friends that it was only Fat Chris, a nobody. Bahtuoh stopped his car by Parker, and McGee pulled out a gun and fired into Parker's chest. The shots killed Parker, and Bahtuoh sped away. Bahtuoh then dropped off McGee and went into hiding himself.

Approximately six weeks later, Bahtuoh surrendered to the police with the assistance of his lawyer. He initially denied that he or his car had been at the scene of the murder, but in a later interview admitted Parker had been shot from his car. After the state filed its complaint against him, Bahtuoh explained to the grand jury that on the night in question he had been hanging out with a group of friends when shots were fired from a car driving by. The group fled to nearby cars, and Bahtuoh got into his along with McGee. Shortly after the two drove away, Bahtuoh saw Parker flagging him down. Then he turned his car around, stopped next to Parker and asked "what's up?" According to Bahtuoh, he "didn't see [McGee's] gun until it was . . . already standing out the window," right before McGee shot Parker. The grand jury indicted Bahtuoh on multiple counts of first and second degree murder.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

The case was tried to a jury. Before trial Bahtuoh and his attorney decided that he should testify on his own behalf, and defense counsel told the jury during opening statements that Bahtuoh would waive his right to remain silent and testify. Defense counsel predicted that Bahtuoh would explain how he and Parker were acquaintances from college, that he was not very familiar with McGee, and why he had believed that McGee was not armed. After going over Bahtuoh's testimony with the jury, defense counsel asked the jurors "to keep an open mind" until Bahtuoh took the stand and explained what had actually happened on the day of the killing.

The night before the state rested its case, defense counsel nevertheless decided to change strategy. The state had already introduced most of the evidence that defense counsel had planned for by having Bahtuoh's grand jury testimony read into the record. Defense counsel also believed at this point that the state's evidence was weak and that it had failed to prove its case. Counsel advised Bahtuoh not to testify, and Bahtuoh took the advice. The defense therefore rested immediately after the state, without introducing any evidence of its own.

During closing arguments, defense counsel addressed his change in strategy, explaining that it was his fault that Bahtuoh had not testified and that he had decided not to put Bahtuoh on the stand because "the government didn't prove their case and his truthful story came across in his grand jury testimony." Defense counsel's prediction about the strength of the government's case proved only partially correct, however. The jury acquitted Bahtuoh of first degree premeditated murder, but convicted him of first degree felony murder, where the underlying felony was a drive by shooting, and second degree murder, both for the benefit of a gang.

Bahtuoh appealed and also sought state postconviction relief on the basis of ineffective assistance of counsel and other claims. The state court denied Bahtuoh postconviction relief. In a consolidated appeal, the Minnesota Supreme Court affirmed Bahtuoh's conviction and the denial of postconviction relief. State v.

Bahtuoh, 840 N.W.2d 804 (Minn. 2013).  As to Bahtuoh's ineffective assistance of counsel claim, the court concluded that defense counsel's advice to Bahtuoh not to testify, despite counsel's previous statements to the jury, was not constitutionally deficient.  Id. at 816–18.  Bahtuoh then sought habeas relief in federal court under 28 U.S.C. § 2254 on multiple grounds, including ineffective assistance of counsel.  United States Magistrate Judge Jeffrey J. Keyes issued a Report and Recommendation, advising the district court to deny Bahtuoh habeas relief.  The district court adopted the Report and Recommendation and issued a certificate of appealability on Bahtuoh's ineffective assistance of counsel claim.

## II.

Bahtuoh argues that the district erred by concluding that he was not entitled to habeas relief on the basis of ineffective assistance of counsel.  "We review legal issues presented in a habeas petition de novo" and the district court's "underlying factual findings for clear error."  Nunley v. Bowersox, 784 F.3d 468, 471 (8th Cir. 2015) (internal quotation marks omitted).

When, as here, a claim presented in a 28 U.S.C. § 2254 habeas petition has been adjudicated by the state court, "habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA') only if the state court's determination . . . 'was contrary to, or involved an unreasonable application of, clearly established Federal law . . . [or] was based on an unreasonable determination of the facts.'"  Williams v. Roper, 695 F.3d 825, 830 (8th Cir. 2012) (citation omitted) (quoting 28 U.S.C. § 2254(d)).  Although Bahtuoh concedes that the Minnesota Supreme Court properly recited the governing federal law for ineffective assistance of counsel claims, he argues that the court's decision was based on an unreasonable application of that law and an unreasonable determination of the facts.  Each argument will be addressed in turn.

-4-

A.

The Supreme Court explained the standard governing ineffective assistance of counsel claims in Strickland v. Washington, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, a petitioner must show both that (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." Id. at 687–88. Bahtuoh argues that the Minnesota Supreme Court unreasonably applied Strickland's deficiency prong by concluding that it was not objectively unreasonable for defense counsel to advise Bahtuoh not to testify after having promised the jury that he would.

A federal court may grant relief under 28 U.S.C. § 2254(d)'s "unreasonable application" clause if a state court has unreasonably applied the governing legal principle to the facts of the case. Williams v. Taylor, 529 U.S. 362, 413 (2000). The state court's decision must be "more than incorrect or erroneous"—it "must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). A decision is not objectively unreasonable if "fairminded jurists could disagree" as to its correctness. Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Establishing objective unreasonableness is particularly difficult with ineffective assistance of counsel claims. Strickland provides a deferential standard to review such claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689). Because this standard based on reasonable professional assistance is broad and general, courts have "more leeway [under 28 U.S.C. § 2254(d)] . . . in reaching outcomes in case-by-case determinations." Id. at 101 (quoting Yarborough, 541 U.S. at 664). Our review of the Minnesota Supreme Court's application of Strickland's deficiency element to

-5-

Bahtuoh's appeal "is thus doubly deferential," requiring a "highly deferential look at counsel's performance through the deferential lens of § 2254(d)." Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (internal citation and quotation marks omitted).

Given this doubly deferential review, we cannot say that the Minnesota Supreme Court unreasonably applied Strickland here. We have previously recognized that "failing to present witnesses promised in an opening is not always an error of a constitutional dimension." Williams v. Bowersox, 340 F.3d 667, 671–72 (8th Cir. 2003). In Williams, defense counsel changed strategy after the state had called most of the anticipated defense witnesses and counsel believed he had "beat the state's case through his cross-examination of the state's witnesses." Id. at 669 (internal quotation marks omitted). In similar fashion, the Minnesota Supreme Court determined here that defense counsel's change in strategy was reasonable in part because he had weighed the risks of the defendant not testifying "in light of new information—the strength of the State's case—that he [had] not know[n] at the beginning of trial." Bahtuoh, 840 N.W. 2d at 817.

We have not yet had reason to apply Williams to a case in which the promised, but missing, witness was the defendant. Other courts have differed on whether it is reasonable to advise a defendant not to testify after having promised the testimony in opening statements. Compare Ouber v. Guarino, 293 F.3d 19, 27–32 (1st Cir. 2002) (concluding defense counsel's advice was constitutionally deficient), and Williams v. Woodford, 859 F. Supp. 2d 1154, 1162–65 (E.D. Cal. 2012) (same), with Yancey v. Hall, 237 F. Supp. 2d 128, 133–35 (D. Mass. 2002) (concluding defense counsel's advice was not constitutionally deficient), and Francis v. State, 183 S.W.3d 288, 301–05 (Mo. Ct. App. 2006) (same). "This diversity of opinion alone" suggests that the Minnesota Supreme Court did not unreasonably apply Strickland in respect to Bahtuoh's case. See Williams, 340 F.3d at 672.

Furthermore, even courts that have concluded that defense counsel provided ineffective assistance by advising a defendant not to testify after having promised otherwise have suggested that there may be instances in which such a change in strategy could be reasonable. In Ouber v. Guarino, a case relied on by Bahtuoh, the court observed that "unexpected developments sometimes may warrant changes in previously announced trial strategies." 293 F.3d at 29. That court nevertheless concluded that there had been no such unexpected developments during the petitioner's trial (a third attempt following two mistrials due to hung juries). Id. Another court similarly granted habeas relief after concluding that defense counsel's "failure to present the promised testimony [could not] be chalked up to unforeseeable events." Madrigal v. Yates, 662 F. Supp. 2d 1162, 1184 (C.D. Cal. 2009).

As the Minnesota Supreme Court observed, defense counsel's change in strategy in this case was based on unexpected developments. Through both cross examination of the government's witnesses and the reading of Bahtuoh's grand jury testimony, the government's case in chief had provided defense counsel with an opportunity to expose the jury to most of the evidence he had promised during opening statements, namely, that Bahtuoh had a preexisting positive relationship with Parker and was unaware that McGee had a gun in his car. Defense counsel also believed that the state had failed to prove its case (a belief that proved partially correct).

Given that the Minnesota Supreme Court considered these trial developments in order to assess the reasonableness of defense counsel's change in strategy,[2] we

[2]The Minnesota Supreme Court seemed to suggest that because defense counsel's decision was "strategic" it must have been reasonable, see Bahtuoh, 840 N.W.2d at 818 n.3, which would have been contrary to Strickland's command that although strategic decision are "virtually unchallengeable," they are not completely unchallengeable, see Strickland, 466 U.S. at 690–91. On reviewing the Minnesota Supreme Court's decision as a whole, however, it is clear that the court did actually analyze the reasonableness of

-7-

decline to conclude that the court's application of <u>Strickland</u> was objectively unreasonable. We therefore defer to the Minnesota Supreme Court's application of the deficiency element in <u>Strickland</u>'s test under 28 U.S.C. § 2254(d), and need not determine whether that deficiency prejudiced Bahtuoh.

## B.

Bahtuoh also argues that the Minnesota Supreme Court's decision was based on an unreasonable determination of the facts. Specifically, he argues that the Minnesota Supreme Court unreasonably determined (1) that the weaknesses in the state's case were unforeseen to defense counsel and (2) that defense counsel weighed the risks of Bahtuoh not testifying when he advised him not to take the stand. A state court decision is based on an unreasonable determination of the facts only if the "court's presumptively correct factual findings do not enjoy support in the record." <u>Evenstad v. Carlson</u>, 470 F.3d 777, 782 (8th Cir. 2006). Here, there is record support for the state court's factual findings.

First, there is record support for its conclusion that the extent of the weaknesses in the state's case was unforeseen to defense counsel. During cross examination of a state witness, for example, defense counsel was able to establish that Parker had signaled toward Bahtuoh, consistent with Bahtuoh's grand jury testimony. This testimony suggested that Parker had no reason to fear Bahtuoh, and that the two were acquaintances. Defense counsel also told the jury that he no longer had to put Bahtuoh on the stand after the prosecution introduced Bahtuoh's grand jury testimony, "which he gave under oath . . . [and] exonerate[d] him." Finally, Bahtuoh testified at the postconviction hearing that defense counsel told Bahtuoh that he had decided to change strategy and not have him testify because "the State did not prove

_____

defense counsel's strategic decision to advise Bahtuoh not to testify. The court therefore did not impermissibly treat that decision as unreviewable.

-8-

their case and [Bahtuoh] won." Counsel's statements to the jury and Bahtuoh support the Minnesota Supreme Court's determination that the weaknesses in the state's case had been unforeseen by him. Defense counsel's prediction about the strength of the state's case proved to be partially correct since the jury acquitted Bahtuoh of the most serious charged offense (first degree premeditated murder).

There is also record support for the Minnesota Supreme Court's determination that defense counsel weighed the risks if Bahtuoh were not to testify. During the colloquy in which Bahtuoh informed the court of his decision, defense counsel stated that he and Bahtuoh had discussed a defendant's right to testify on "several occasions" and the "pros and cons" of waiving that right. Bahtuoh did not indicate that defense counsel's representation was inaccurate; rather, he affirmatively agreed with counsel's characterization of their prior conversations. Further, Bahtuoh failed to develop a record before the state court that would compel a contrary factual finding, as shown in part by his decision not to call defense counsel as a witness to explain his decision during the postconviction evidentiary hearing. The Minnesota Supreme Court's determination that counsel did weigh the risks of Bahtuoh not testifying was therefore not based on an unreasonable determination of the facts and is entitled to deference under 28 U.S.C. § 2254(d).

III.

For these reasons, we affirm the district court's denial of Bahtuoh's 28 U.S.C. § 2254 habeas petition.

_____