COMMONWEALTH *VS.* MICHAEL KEOHANE.

Essex. April 7, 2005. - July 1, 2005.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Homicide. Armed Assault in a Dwelling. Practice, Criminal,* Instructions to jury, Assistance of counsel, Lesser included offense, Duplicative convictions, Capital case. *Evidence,* Exculpatory, Relevancy and materiality, Photograph.

At a murder trial, the judge correctly concluded that he was not required, sua sponte, to instruct on the lesser included offense of manslaughter and that, in any event, the evidence (which demonstrated that over three and one-half hours had elapsed between the alleged provocation and the killing, during which time the defendant left the scene of the provocation and did, in fact, "cool off") did not warrant an instruction on voluntary manslaughter [566-569]; similarly, the defendant failed to demonstrate that his counsel rendered ineffective assistance by failing to request such an instruction, especially where the theory of the defense was that another person had killed the victim [569-570].

At a murder trial, the judge did not err in refusing to allow the defendant to pursue a line of inquiry that a third party was motivated to commit the killing because of the racist attitude of the victim, where the defendant failed to meet his burden of showing that the testimony sought was more than mere speculation, and where the defendant was given ample opportunity to explore other issues suggesting that the third party could have been the killer. [570-572]

A criminal defendant failed to demonstrate that the trial judge abused his discretion by refusing to conduct an individual voir dire of prospective jurors regarding certain photographs and by refusing to display two autopsy photographs to the venire [572]; further, the judge did not abuse his discretion by admitting in evidence certain graphic photographs depicting the victim's body, which supported the Commonwealth's theory of how the murder occurred and were also relevant to the issue of extreme atrocity or cruelty [572-574], and the judge's instructions to the jury regarding the use of the photographs were appropriate in content and not excessive [574].

This court concluded that a criminal defendant's convictions of murder in the first degree and armed assault in a dwelling were not duplicative, where each offense included an element that the other did not. [574-575]

INDICTMENTS found and returned in the Superior Court Department on September 30, 1998.

The cases were tried before *Isaac Borenstein*, J., and a motion for a new trial, filed on July 9, 2003, was heard by him.

*Janet Hetherwick Pumphrey* for the defendant.

*Catherine Langevin Semel*, Assistant District Attorney, for the Commonwealth.

Cowin, J. A jury convicted the defendant of murder in the first degree on a theory of extreme atrocity or cruelty and also found him guilty of armed assault in a dwelling. The defendant appeals from his convictions and from the denial of his motion for a new trial. Represented by new counsel on appeal, the defendant claims error because the jury were not permitted to consider a verdict of voluntary manslaughter; the trial judge excluded testimony concerning the victim's alleged racial bias; and the judge failed to conduct individual voir dire on the issue of graphic photographs, subsequently admitting several such photographs in evidence. The defendant also maintains that his conviction of armed assault in a dwelling is duplicative of his conviction of murder in the first degree. Finally, he requests that we exercise our extraordinary power under G. L. c. 278, § 33E, to order a new trial or reduce his conviction. We affirm the convictions and the order denying the motion for a new trial and decline to exercise our power under G. L. c. 278, § 33E.

1. *Facts*. Because the defendant claims that there should have been a charge on voluntary manslaughter, for purposes of that analysis we assume the version of the facts most favorable to the defendant. *Commonwealth* v. *Schnopps*, 383 Mass. 178, 179 (1981), *S.C.*, 390 Mass. 722 (1984). We briefly summarize those facts, leaving further details to the specific segments of the opinion to which the evidence relates. The defendant and the victim, Michael Monahan, had been friends and, in fact, had lived together in the defendant's trailer for a few months prior to the murder. A few weeks before the murder, the defendant borrowed the victim's automobile, and while he was using it, the car was impounded. Although the victim wanted the defendant to pay the cost of the impoundment, apparently the defendant never did so. On Friday, August 28, 1998, the night before the murder, the defendant and several others were socializing in the victim's room at the Salisbury Inn, a motel where the victim was living. The victim's wallet was taken at some

point that night, and the victim blamed the defendant for its disappearance.

The next evening, the victim and others were attending a party at a home in Salisbury. The victim was upset because the defendant owed him money for the impounded car and because he believed that the defendant had taken his wallet the night before. One of the men at the party telephoned the defendant and invited him to the house. The invitation was a pretext, however, so that the victim could beat up the defendant. The defendant arrived at the party some time between 9 and 10 P.M., and the victim carried out his plan. When the defendant accepted the victim's offer of a beer, the victim, a "big," "strong" young man, smashed a bag of beer bottles into the defendant's face, punched and hit him, and bashed his head against a wall. Spitting in the defendant's face, the victim said he wanted his money and his driver's license back, adding, "I'll beat you up every time I see you until I get it," or words to that effect. Bloodied, the defendant left. Witnesses who saw the defendant in the hour following the beating described him as "very upset" and "[a]ngry," saying he was going to "get" the victim with a baseball bat. The beating was followed by another encounter between the victim and the defendant between 10 and 11:30 P.M. At that time, the victim taunted the defendant, and although the victim and his friends had a two-by-four piece of lumber, another piece of wood, and a tire iron nearby in a car, they never used them, and the defendant apparently was unaware of them. The defendant drove away after this confrontation.

Later that night, the defendant went with friends to a party in Exeter, New Hampshire, at the home of Robin Anderson, a friend of the defendant. At the party, the defendant asked for gloves, sought a ride to the Salisbury Inn, and said, "I'm gonna get him . . . . I'm gonna crack him in the face with a baseball bat." Sometime between 1 and 2 A.M., the defendant and several others, including Michael Hawkins, left the party in Anderson's car. The group drove to the Salisbury Inn. En route, the defendant said that he was "going to beat [the victim] up."

At the motel, the defendant and Robin Anderson left the car

and went into the victim's room,[1] the defendant entering through the window and then opening the door for Anderson. The defendant handed her a steak knife that was near the victim's bed. She told the defendant not to do anything stupid but he said, "It's too late." The defendant struck the victim several blows about the head with a baseball bat, after which he and Anderson returned to the car. The defendant was carrying a bloody bat, seemed upset, and said, "Oh, my God, I think I killed him." Anderson was still holding the knife. The group returned to the party in Exeter, stopping en route to discard the bat and knife in an area off the highway.

The victim's body was discovered by one of his friends who also noticed that the window was open and the curtain "was hanging off." The cause of death was blunt trauma to the head and face; the victim had no defensive wounds. The police eventually arrested the defendant. Robin Anderson and Michael Hawkins, members of the group who drove to the Salisbury Inn, led the police to the location of the bloody bat and the knife.

There was no forensic evidence connecting the defendant to the killing. A defense theory was that another person had committed this crime.

2. *Manslaughter instruction.* No manslaughter instruction was requested in this case, and none was given. The defendant claims in his motion for a new trial and again on appeal that the evidence warranted a manslaughter instruction, and that the failure of the judge to give such an instruction, sua sponte, relieved the Commonwealth of its burden of proving all elements of the case against him. When we review the denial of a motion for a new trial, we examine the judge's conclusions "to determine only whether there has been an abuse of discretion or other error of law," and in doing so, we give "special deference to the decisions of a judge who was [also] the trial judge." *Commonwealth* v. *Murphy,* 442 Mass. 485, 499 (2004), citing *Commonwealth* v. *Grace,* 397 Mass. 303, 307 (1986). The judge concluded correctly that he was not required, sua sponte, to

---

[1]Although the point was disputed, there was testimony that Michael Hawkins also left the car for some time while the defendant and Robin Anderson were in the victim's room.

instruct on lesser included offenses, see *Commonwealth* v. *Berry*, 431 Mass. 326, 338 (2000), and that, in any event, the evidence did not warrant an instruction on voluntary manslaughter.

A killing may be rendered a voluntary manslaughter if it is the result of "a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Id.* at 334, quoting *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980). An instruction on voluntary manslaughter is appropriate if, viewing the evidence in the light most favorable to the defendant, "there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool." *Commonwealth* v. *Andrade*, 422 Mass. 236, 237 (1996), quoting *Commonwealth* v. *Schnopps*, 383 Mass. 178, 180 (1981). "The evidence must be sufficient to create a reasonable doubt in the minds of a rational jury that a defendant's actions were both objectively and subjectively reasonable. That is, the jury must be able to infer that a reasonable person would have become sufficiently provoked and would not have 'cooled off' by the time of the homicide, and that in fact a defendant was provoked and did not cool off." *Commonwealth* v. *Groome*, 435 Mass. 201, 220 (2001), quoting *Commonwealth* v. *McLeod*, 394 Mass. 727, 738, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985).

In ruling on the motion for a new trial, the judge found that at least three and one-half hours elapsed between the victim's attack on the defendant at the home in Salisbury and the time of the murder.[2] Even assuming that the attack on the defendant amounted to adequate provocation,[3] the evidence did not warrant a finding that a reasonable person would not have cooled off during that time. As the judge found, "under any view of

---

[2]The verbal confrontation between the defendant and the victim occurred some time after the beating, but "mere words alone generally do not constitute sufficient provocation to warrant a manslaughter charge." *Commonwealth* v. *Anderson*, 396 Mass. 306, 314 (1985), citing *Commonwealth* v. *Hartford*, 346 Mass. 482, 490-491 (1963).

[3]The judge, who had the benefit of seeing photographs of the defendant taken a few days after the beating, found that the injuries to the defendant were "minor in nature."

the evidence," the defendant had more than sufficient time to cool off. There was undisputed testimony that the attack on the defendant occurred between 9 and 10 p.m. The earliest that the defendant arrived at the victim's motel was about 1:30 a.m. Action in response to an event that occurred three and one-half hours earlier is the very antithesis of action in the "heat of passion." Such a time period between the precipitating event and the murder is far longer than what we ordinarily recognize as appropriate to support a voluntary manslaughter instruction. See *Commonwealth* v. *McLeod, supra* at 738-739 (although fifteen to thirty minutes "significantly longer cooling off period than is usually the situation in manslaughter cases," court assumed, without deciding, that manslaughter instruction required where defendant "severely beaten" and lost consciousness at least once); *Commonwealth* v. *Coleman,* 366 Mass. 705, 707-708, 715 (1975) (manslaughter in "heat of passion" sense not plausible where defendant had time to calm down in "several" minutes between time victim punched defendant and bloodied his nose and when defendant shot victim).[4]

Our cases suggest that even where sufficient provocation exists, if a defendant leaves the scene of the provocation (as here) and then returns to attack the victim, the defendant is considered to have had adequate opportunity for his anger to subside. See, e.g., *Commonwealth* v. *Amaral,* 389 Mass. 184, 189 (1983) (no error in refusal to give voluntary manslaughter instruction where evidence showed victim shoved defendant only minutes before shooting but defendant left and returned).

An equally powerful reason for not giving a voluntary manslaughter instruction in this case is that, as the judge found, the defendant in fact did cool off between the time of his beating and the time of the murder. He removed himself from the scene of two confrontations with the victim. He undertook other activities and planned to attack the victim. He threatened to "get" the victim and said he would "crack him . . . with a baseball bat"; he went to a party in Exeter, New Hampshire; he asked for gloves while at the party and arranged for a ride to

---

[4]A defendant's sudden discovery of ongoing spousal infidelity seems to be an exception that may warrant a longer "cooling off" period. See *Commonwealth* v. *Andrade,* 422 Mass. 236, 238 (1996).

Salisbury; he gained access to the victim's room through a window, opened the door for Robin Anderson, gave her a steak knife that was by the victim's bed (with which the victim could have defended himself), and then battered the victim repeatedly with the baseball bat. These acts clearly indicate that the defendant was not acting from "a sudden transport of passion," but rather from an anger that was "smoldering," the type of anger that has been held insufficient to warrant an instruction on voluntary manslaughter. See *Commonwealth* v. *Fuller*, 421 Mass. 400, 413 (1995).

The defendant's reliance on *Commonwealth* v. *Andrade*, 422 Mass. 236 (1996), is misplaced. In that case, a voluntary manslaughter instruction was given. On appeal, the court considered whether the defendant was prejudiced by the erroneous admission of certain hearsay. The court concluded that jurors might have found that the defendant killed his wife in a heat of passion, seven hours after confirming her infidelity, but noted that such was an "unlikely" result, given the "dearth of evidence" supporting voluntary manslaughter. *Id.* at 237, 240-241. In the *Andrade* case, the defendant did not leave the scene and then return to seek revenge. *Id.* at 240-241.[5]

The defendant also contends in his motion for a new trial that he was denied the effective assistance of counsel because counsel did not request a manslaughter instruction. For a defendant to prevail on a claim of ineffective assistance of counsel, he must show that better work "might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 & n.10 (1977), citing *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). In view of our decision that a manslaughter instruction was not warranted, a claim of ineffective assistance of counsel fails. *Commonwealth* v. *Reid*, 400 Mass. 534, 541 (1987).

Moreover, as the judge found, the defense strategy, to develop the theory that the defendant did not kill the victim, was "both reasonable and understandable" and "cannot be viewed as 'manifestly unreasonable.' " See *Commonwealth* v. *Lynch*, 439

---

[5]Our law on the evidence permitting a voluntary manslaughter instruction is well settled. Thus, we need not look to cases in other jurisdictions cited by the defendant. We note, however, that the cases he cites are distinguishable.

Mass. 532, 537 (2003), quoting *Commonwealth* v. *Finstein*, 426 Mass. 200, 203 (1997). Given the lack of any forensic evidence connecting the defendant to the murder and the fact that the source of all the evidence of the defendant's actions was from the testimony of individuals who arguably had a reason to divert blame from themselves, the defense adopted a reasonable strategy of "aggressive, thorough, and careful cross-examination . . . to discredit every witness . . . to show [their] potential motive to kill [the victim] and their potential motive to incriminate the defendant." A manslaughter instruction would have been inconsistent with the theory of the defense, and in light of that defense, counsel had sound strategic reasons for not requesting such an instruction.

3. *Third-party culprit.* During trial, the defendant attempted to demonstrate that another man, Michael Hawkins, was motivated to commit the murder because of the racist attitude of the victim. The judge refused to let the defendant pursue this line of inquiry, and the defendant claims that he was thereby denied the right to present a defense. There was evidence that, at the party at the victim's motel room the night before the murder, there was a confrontation between Hawkins, a white male, and Hawkins's mother concerning Hawkins's dating Joy Miller, a black woman, while Hawkins's girl friend, the victim's sister, was eight months pregnant with Hawkins's child. There was testimony that the victim, too, was unhappy that Hawkins was with another woman in these circumstances. One witness also testified about an incident several weeks before the murder, when a "black kid" was beaten up in a fight outside the defendant's trailer.

The defendant has a constitutional right to present evidence that another may have committed the crime. See *Commonwealth* v. *Jewett*, 392 Mass. 558, 562 (1984). "A defendant may introduce evidence that tends to show that another person committed the crime or had the motive, intent, and opportunity to commit it." *Commonwealth* v. *Lawrence*, 404 Mass. 378, 387 (1989), quoting *Commonwealth* v. *Harris*, 395 Mass. 296, 300 (1985). See *Commonwealth* v. *Murphy*, 282 Mass. 593, 597-598 (1933). Normal relevancy considerations apply in determining the admissibility of evidence that someone else committed the

crime. *Commonwealth* v. *Jewett, supra* at 562. If "the defense offers its own theory of the case (beyond merely putting the government to its proof), its evidence must have a rational tendency to prove the issue . . . raise[d], and the evidence cannot be too remote or speculative." *Commonwealth* v. *Rosa,* 422 Mass. 18, 22 (1996). Because the issue is one of constitutional dimension, we are not bound by an abuse of discretion standard, but rather examine the issue independently. See *Commonwealth* v. *Conkey,* 443 Mass. 60, 66-67 (2004). See also *Commonwealth* v. *Rosario, ante* 550, 556-557 (2005).

To develop his theory that Hawkins was motivated to kill the victim because of the victim's "racist attitudes," the defendant sought to cross-examine various witnesses on the issue of racial animus. However, the defendant never made a showing that racial bias on the victim's part was a motivation for his murder or had any role in the interaction between the defendant, the victim, and the others involved in the events immediately preceding the murder. The defense did elicit evidence that the victim was angry that Hawkins was dating another woman, but there is nothing to suggest that the anger was anything other than resentment of Hawkins's philandering. The defendant failed to meet his burden of showing that "testimony of more than minimal value . . . might have been forthcoming." *Commonwealth* v. *Johnson,* 431 Mass. 535, 538 (2000), quoting *Commonwealth* v. *Fordham,* 417 Mass. 10, 19-20 (1994). The judge acted within his broad discretion in ruling that the inquiry into racial animus was irrelevant, concluding that it was "[n]othing [but] pure speculation."

Moreover, the defendant was given ample opportunity to explore other issues suggesting that Hawkins could have been the killer. He was permitted to show that Hawkins was the one who had actually taken the victim's wallet and that Hawkins knew the baseball bat's location. The defendant additionally was allowed to impeach Hawkins with his prior convictions, to elicit testimony that the victim would not permit Hawkins to sleep in his motel room the night of the murder, and to demonstrate that Hawkins had a motive to blame the defendant in order to save himself from prosecution. As stated above, there was no showing that racial animus as a motive of a third-

party suspect to kill was anything other than speculation. The judge properly excluded the racial animus component of the third-party suspect inquiry.[6]

4. *Photographs.* The defendant contends that the judge abused his discretion by refusing to conduct an individual voir dire of prospective jurors regarding certain photographs and by refusing to display two autopsy photographs to the venire. The judge concluded that individual voir dire on the subject was not necessary and that displaying the photographs to the jurors would unduly emphasize the pictures. He did, however, inform the venire that the case involved allegations that the victim was struck repeatedly on the head with a baseball bat and that there would be "graphic testimony" and "graphic photographs of the [injuries]." He then asked the jurors whether it would be "difficult" or "uncomfortable" for them to be fair and impartial. The eight people who answered in the affirmative were excused for cause.

Other than asking the statutory questions, see G. L. c. 234, § 28, the "judge has broad discretion as to the questions to be asked, and need not put the specific questions proposed by the defendant." *Commonwealth* v. *Sanders*, 383 Mass. 637, 641 (1981). Here, the collective voir dire adequately dealt with the issue and the judge acted within his discretion.

The defendant also claims error in the admission of gruesome photographs depicting the victim. Specifically, he claims that the inflammatory nature of the photographs outweighed their probative value, that one photograph of the body at the scene was "particularly offensive" because it showed the victim's "eyes and tongue bulging out," and that the autopsy photographs showed the body as altered. As the defendant objected to the admission of most of the photographs, we review to determine

---

[6]In one sentence the defendant suggests that "at least two of [the prosecution witnesses] also had some motive to kill [the victim]." He does not identify the prosecution witnesses to whom he refers and this one fleeting reference does not suffice as appellate argument. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See also *Adoption of Kimberly*, 414 Mass. 526, 536-537 (1993). In any event, the defendant was permitted to cross-examine all the prosecution witnesses concerning their motive to lie and the inconsistencies in their statements and to impeach them with their past criminal records. Cf. *Commonwealth* v. *Johnson*, 431 Mass. 535 (2000).

whether there was error and, if so, whether it was harmless beyond a reasonable doubt. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 n.7 (1999). "The admissibility of photographic evidence is left to the discretion of the trial judge, and we will overturn the judge's decision only where a defendant is able to bear the heavy burden of demonstrating an abuse of that discretion." *Commonwealth* v. *Waters*, 399 Mass. 708, 715 (1987). See *Commonwealth* v. *Vizcarrondo*, 431 Mass. 360, 362-363 (2000). "[I]f the photographs possess evidential value on a material matter, they 'are not rendered inadmissible solely because they are gruesome [or duplicative] or may have an inflammatory effect on the jury.' " *Commonwealth* v. *Ramos*, 406 Mass. 397, 407 (1990), quoting *Commonwealth* v. *Bys*, 370 Mass. 350, 358 (1976). See *Commonwealth* v. *Benson*, 419 Mass. 114, 118 (1994) (same). "[P]hotographs indicating the force applied and portraying the injuries inflicted may properly be admitted on the issue of whether the murder was committed with extreme atrocity or cruelty, as well as on the issue of premeditation and deliberation." *Commonwealth* v. *Ramos*, *supra* at 406-407.

The judge did not abuse his discretion in admitting seven photographs of the body, four of which were of the murder scene in the motel room, and three from the autopsy. The four photographs from the murder scene showed the victim from four different angles; only one of the four focused on the victim's face and head, the area where the injuries were sustained. The Commonwealth was entitled to present the jury with the photographs of the scene to support its theory of how the murder occurred. These photographs were also relevant to the issue of extreme atrocity or cruelty. See *Commonwealth* v. *Obershaw*, 435 Mass. 794, 802-804 (2002). The three autopsy photographs, introduced during the medical examiner's testimony, were useful in explaining the nature of the wounds and cause of death, issues relevant to premeditation and deliberation as well as to extreme atrocity or cruelty. See *Commonwealth* v. *Ramos*, *supra* at 407. None of the autopsy photographs depicted the body in an altered state (other than the victim's head shaved on one side and the blood removed from his face so that the wounds would be visible). See *Com-*

*monwealth* v. *Jackson*, 428 Mass. 455, 464-465 (1998) (distinguishing sole alteration of shaving victim's hair around wound from case where medical examiner "significantly altered" body during autopsy).[7]

The defendant now criticizes, for the first time, the judge's cautionary instructions to the jurors about the use of the graphic photographs. He claims that these instructions were "excessive" and "overemphasiz[ed]" the photographs. The judge's instructions were appropriate in content and it was not excessive to give them during voir dire, at the points during the trial when the photographs were displayed, after the prosecutor's closing argument and again during his final charge. See *Commonwealth* v. *Cardarelli*, 433 Mass. 427, 432 (2001).

5. *Duplicative convictions.* The defendant maintains that his convictions of murder in the first degree and armed assault in a dwelling are duplicative. We have recently stated the test for determining whether convictions are duplicative by quoting in *Commonwealth* v. *Jones*, 441 Mass. 73, 74-75 (2004), a passage from *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002), as follows:

> "The traditional rule in Massachusetts, as embodied in *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871), and its progeny, is that a defendant may properly be punished for two crimes arising out of the same course of conduct provided that each crime requires proof of an element that the other does not. See *Commonwealth* v. *Buckley*, 410 Mass. 209, 222 (1991); *Commonwealth* v. *Crocker*, 384 Mass. 353, 357 (1981); *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306-307 (1972). As long as each offense includes an element that the other does not, 'neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not [duplicative].' *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981). At the same time, a court may examine whether the actions of a defendant

[7]The defendant misinterprets a remark by the judge that "it may have been better not to do it, and only refer to it." This remark was made after closing argument, in response to the defendant's motion for a mistrial. The judge was not referring to the admission of a photograph in evidence, but rather to the display of the photograph to the jury during closing argument.

were 'so closely related in fact as to constitute in substance but a single crime.' *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 662-663 (1979). In such cases, the defendant cannot properly be sentenced both for the more serious crime and the lesser included offense. See *Commonwealth* v. *Thomas*, 401 Mass. 109, 119-121 (1987) (indictment for indecent assault and battery dismissed where defendant convicted of rape). Cf. *Commonwealth* v. *Jones, supra* at 394 (although vehicular homicide not lesser included crime of manslaughter, two offenses were sufficiently closely related so as to preclude punishment on both)."

We continue to adhere to this test. Convictions are not duplicative as long as each offense includes an element that the other does not. In addition, the judge may determine whether the actions of a defendant are so closely related in fact as to constitute in substance but one crime. Here, each offense includes an element that the other does not. The two offenses also differ in fact because the armed assault offense involves a breaking and entering that is distinct from the murder.

6. *Relief pursuant to G. L. c. 278, § 33E.* The defendant seeks relief pursuant to G. L. c. 278, § 33E, because the killing in this case "is more consistent with manslaughter than murder in the first degree." We have examined the entire record. As described above, there was no basis for a verdict of manslaughter in this case. The defendant, although admittedly provoked, took matters into his own hands, thoughtfully and methodically conceived a plan to "get" the victim, and then carried out that plan. We have refused to reduce verdicts in similar situations. See *Commonwealth* v. *Pitts*, 403 Mass. 665, 669-670 (1989); *Commonwealth* v. *Watkins*, 373 Mass. 849, 852-853 (1977). Nor does a careful review of the evidence indicate that any other relief should be granted.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*